**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: GLUGAGON-LIKE** | **:** | **CIVIL ACTION** |
| **PEPTIDE-1 RECEPTOR AGONISTS** | **:** | |
| **(GLP-1 RAS) NON-ARTERITIC** | **:** | |
| **ANTERIOR ISCHEMIC OPTIC** | **:** | **MDL No. 3163** |
| **NEUROPATHY PRODUCTS** | **:** | **25-md-3163** |
| **LIABILITY LITIGATION** | **:** | **01-md-3163** |
| | **:** | |
| | **:** | |
| **THIS DOCUMENT RELATES TO:** | **:** | |
| | **:** | **HON. KAREN SPENCER MARSTON** |
| *ALL ACTIONS/ALL CASES* | **:** | |
| | **:** | |

**CASE MANAGEMENT ORDER NO. 12**

**CROSS CUTTING ISSUES**

**AND NOW,** this 2nd day of July, 2026, upon consideration of the parties' letter briefs on the appropriateness of early discovery on cross cutting issues (Doc. Nos. 102–04, 108–10), and the arguments made by counsel during the status conference on June 23, 2026, the Court finds as follows:

1.      This MDL involves personal injury actions stemming from the use of glucagon-like peptide-1 (GLP-1) receptor agonists and GLP-1/glucose-dependent insulinotropic polypeptide (GIP) dual receptor agonists (collectively, "GLP-1 RAs") manufactured by Defendants and sold under the brand names Ozempic, Wegovy, Rybelsus, Saxenda, Trulicity, Mounjaro, and Zepbound.[1]  (Doc. No. 1 at 1.)  Plaintiffs allege that these drugs caused them to

---

[1] Ozempic, Wegovy, Rybelsus, and Saxenda are manufactured by the Novo Nordisk Defendants, and Trulicity, Mounjaro, and Zepbound are manufactured by the Eli Lilly Defendants.  Earlier this year, the Novo Nordisk Defendants stopped marketing the semaglutide pill under the brand name "Rybelsus," and instead, began marketing it as the pill form of Ozempic or Wegovy, depending on the dosage.

suffer from non-arteritic anterior ischemic optic neuropathy (NAION), a condition that results in sudden, permanent vision loss.  (*Id.*)

2.	Currently, there are more than 130 cases included in the MDL.  (*See* June 23, 2026 Hr'g. Tr. at 7:14–16.)  Although the alleged drug, dosage, and precise injury vary by Plaintiff, there are many commonalities among the cases.  Notably, each Plaintiff claims they were prescribed one or more of the identified drugs for the treatment of type 2 diabetes and/or long-term weight management and that as a result, they suffered NAION.  (Doc. No. 1 at 1.) And all Plaintiffs bring substantially identical claims for failure to warn, design defect, and breach of warranties.  (*Id.*)

3.	The parties have proposed two competing schedules for structuring discovery and other pre-trial proceedings.  Defendants argue that the Court should "sequence early discovery on threshold issues of [1] general causation and [2] federal preemption/warning adequacy." (Doc. No. 103 at 1; Doc. No. 102 at 1.)  That is the structure the Court adopted in the related MDL, where the plaintiffs allege that they suffered gastrointestinal ("GI") injuries after taking one or more of Defendants' GLP-1 RAs.  *See Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liab. Litig.* ("*MDL 3094*"), No. 24md3094, Doc. No. 235 (E.D. Pa. Aug. 23, 2024).  Plaintiffs oppose early discovery and motion practice on these cross cutting issues, arguing that there "are significant differences between this NAION MDL and MDL 3094 that render such bifurcated discovery less efficient and less helpful to the Court in this case."  (Doc. No. 104 at 1.)  Plaintiffs propose that instead, the parties should move forward with "pilot cases," which they describe as "a select group of cases that can be used to conduct focused

discovery bearing on specific issues such as plaintiff-specific information, preemption, failure to

warn and causation (specific and general)."  (*Id.*)[2]

---

[2] Plaintiffs clarify in their initial brief that pilot cases are *not* the same as bellwether cases:

> Plaintiffs' pilot cases framework *differs from a bellwether program*, under which each case would be fully worked up for trial.
>
> . . . .
>
> Plaintiffs' proposal *does not entail a full bellwether workup* for the pilot cases. Discovery relating to certain case-specifics, for example, would be deferred until the selection of trial candidate cases.

(Doc. No. 104 at 1, 5 (emphases added).)  Despite these assertions, virtually the first thing that Plaintiffs said at the hearing on this issue was that they actually do want bellwether selection at this stage:

> I'm going to start out today with our position, and then I'm going to let Parvin step in to talk about some of the deeper issues on the topic of cross-cutting. I want to make sure our position is clear. We believe this should be—*we should move to bellwether*.

(June 23, 2026 Hr'g Tr. at 21:15–21 (emphasis added).)  When the Court questioned whether counsel meant to say, "pilot cases," counsel explained that Plaintiffs initially proposed pilot cases in their briefing as a "compromise" because Plaintiffs "knew from [*MDL 3094*] that the Court is very interested in streamlining," and pilot cases would allow some minimal case specific discovery without doing an entire bellwether workup.  (*Id.* at 25:8–23.)  Despite conceding that their letter briefs *did not request bellwether selection*, counsel went on to state that Plaintiffs "have always been on the position this should be bellwether."  (*Id.* at 27:6–28:1.)

This is not the first time that Plaintiffs' leadership counsel—a group that almost entirely overlaps with leadership counsel in *MDL 3094*—have shifted positions on an issue at a court hearing.  *See, e.g.*, *MDL 3094*, Doc. No. 235 at 9 (Aug. 23, 2024); *id.*, Doc. No. 276 at 11–12 (Oct. 17, 2024); *id.*, Doc. No. 467 at 58 n.27, 65 (Aug. 15, 2025).  Although the Court has in the past considered arguments raised for the first time at oral argument, we are not inclined to continue to do so.  As the Court explained at the June 23, 2026 hearing, these shifts in argument—which often happen after *extensive* briefing—catch everyone "by surprise" and result in a waste of litigant and judicial resources.  (June 23, 2026 Hr'g Tr. at 28:2–7.)  Indeed, here, large portions of Plaintiffs' briefing were rendered incomplete, if not superfluous, when Plaintiffs shifted from explicitly requesting something other than bellwether selection in their briefs to arguing that "we should move to bellwether" at the hearing.  (*Compare* Doc. No. 104 at 5, *with* June 23, 2026 Hr'g Tr. at 21:15–21.)

Because Plaintiffs did not propose bellwether selection in their briefing *(and to the contrary, explicitly disclaimed it)*, the Court does not consider it in this Order.  *See Tomasko v. Iran H. Weinstock, P.C.*, 357 F. App'x 472, 479 (3d Cir. 2009) (finding that "the specific objections that Weinstock raised for the first time at oral argument in the District Court have been waived"); *In re Corio*, 371 F. App'x 352, 355 (3d Cir. 2010) (finding that the bankruptcy court did not abuse its discretion when it refused to consider an argument raised for the first time during oral argument); *Doherty v. Allstate Indemnity Co.*, No. 15cv05165, 2017 WL 1283942, at *23 (E.D. Pa. Apr. 6, 2017) ("[B]ecause this argument was asserted for the first time in Doherty's reply and at oral argument, it is waived.").  Instead, the Court focuses on Plaintiffs' request for pilot cases, the other arguments made in Plaintiffs' briefs, and the arguments made at the June 23, 2026 conference that were consistent with that briefing.

4.      As with *MDL 3094*, the Court will order early discovery and motion practice on general causation and preemption/warning adequacy in this MDL.  Courts across the country have found it appropriate to frontload these issues in pharmaceutical cases.  *See, e.g.*, *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20md2924, Pretrial Order No. 30 (S.D. Fla. June 18, 2020) (establishing a case management schedule in a pharmaceutical MDL that prioritizes discovery and motion practice on general causation); *In re: Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, No. 16md02691, Doc. No. 102 (N.D. Cal. Sept. 26, 2016) (allowing initial discovery in pharmaceutical MDL on general causation); *In re: Incretin Mimetics Prods. Liab. Litig.*, No. 13md2425, Doc. No. 325 (S.D. Cal. Feb. 18, 2014) (allowing initial discovery and document production in pharmaceutical MDL on general causation); *id.* at Doc. No. 744 (expanding scope of prior scheduling order to also include early discovery and motion practice on the issue of preemption).

5.      Plaintiffs argue that "an approach identical to that taken in MDL 3094" is not appropriate in this MDL because here, there are significantly fewer Plaintiffs (around 130 instead of more than 3000, to date) and only a single injury, NAION (as opposed to around a dozen distinct GI injuries).  (*See* Doc. No. 104 at 1–2.)[3]  But those facts do not undermine the utility of addressing these issues—which affect *every* case in this MDL—at the outset of the litigation. *See* Fed. R. Civ. P. 16.1(b)(3)(B), advisory committee's note to 2025 amendment ("Experience has shown that in many cases an early exchange of information about the factual bases for claims and defenses can facilitate efficient management . . . .  Early exchanges may depend on a number of factors, including . . . whether there are issues that should be addressed

---

[3] Yet, confusingly, Plaintiffs also seem to concede that early resolution of these issues is appropriate:  "Plaintiffs propose that the parties take early causation, preemption and limited plaintiff-specific discovery in the context of . . . pilot cases . . . ."  (Doc. No. 104 at 2.)

4

early in the proceeding (e.g., jurisdiction, *general causation*, or *preemption*) . . . ." (emphasis added)); Manual for Complex Litigation (Fourth) § 22.634 (encouraging "the judge and counsel" to "work to narrow the issues, claims, and defenses" early in the case and to identify "[i]ssues to be taken up early in the litigation," such as "whether the facts and expert evidence support a finding that the products or acts in question have the capacity to cause the type of injuries alleged," and whether the "plaintiffs' claims are barred"); Douglas G. Smith, *Resolution of Common Questions in MDL Proceedings*, 66 Kan. L. Rev. 219, 253 (2017) ("[I]n many MDL proceedings there are generic issues that may be dispositive of the entire litigation, and resolution of such issues early in the proceedings may render further proceedings unnecessary. Frontloading consideration of such issues has obvious efficiencies for the litigation. . . . Indeed, even where the court ultimately denies motions seeking to narrow the litigation, such proceedings may play a valuable role in educating the court regarding the common issues in the case at the outset.").

6.      Plaintiffs also argue that if the Court wishes frontload these issues, they should be considered in the context of a few select cases.  (Doc. No. 104 at 1 (arguing that the "pilot case framework . . . would empower the Court to rule on summary judgment motions regarding causation with not only the benefit of the parties' experts, but also the insight of treating physicians, and to couch those rulings with greater awareness of the realities of other plaintiff-specific issues").)  But those plaintiff-specific facts are irrelevant to general causation and preemption/warning adequacy.  *See, e.g.*, *In re Zoloft (Sertralinehydrochloride) Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 490 (E.D. Pa. 2016) ("General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury.  Sequence matters: a

5

plaintiff must establish general causation before moving to specific causation." (quoting *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 377–78 (5th Cir. 2010)); *MDL 3094*, Doc. No. 276 at 20 (Oct. 17, 2024) (rejecting Plaintiffs' contention that Defendants' communications to physicians are relevant to preemption/warning adequacy because those communications "are not needed for the Court to determine whether a drug's approved label already contains the warnings that Plaintiffs seek to add and if not, whether the FDA would have rejected additional warnings to the approved label, such that Plaintiffs' state law failure to warn claims are preempted").

7.      Finally, the Court disagrees with Plaintiffs' suggestion that allowing limited early discovery and motion practice on cross cutting issues will place this MDL at "risk" of "falling behind" MDL 3094 and the related state court litigations.  (Doc. No. 104 at 2.)  As Plaintiffs acknowledge, "[i]n this case, Defendants have already produced a portion of the relevant regulatory discovery," and they have agreed to "begin the production of marketing discovery in early 2027."  (*Id.*)  Nothing in this Order forecloses that discovery or otherwise stops the case from moving forward.  Instead, it streamlines *how* the case will move forward, allowing structured discovery and motion practice on issues that could resolve all the cases in this MDL, result in the Lilly Defendants' termination from the case,[4] or on the other hand, determine that these issues are to be decided by a jury and move forward with bellwether selection with the benefit of that ruling.  And Defendants' proposed deadlines are not protracted, and in fact are swiftly approaching, with fact discovery to be complete in October 2026, expert discovery to be

---

[4] As of June 15, 2026, only 19 of the 137 cases have been brought against the Lilly Defendants. (June 23, 2026 Hr'g Tr. at 7:14–16.)

complete by the end of the 2026, and motions fully briefed in the first quarter of 2027.[5] (Doc. No. 103 at 1–2.) Those deadlines would bring this litigation up to speed with *MDL 3094* and likely place this MDL *ahead* of the related state court cases, all of which remain at the pleadings stage and lack scheduling orders. Most importantly, while the parties proceed on these cross cutting issues, they will also begin exchanging marketing discovery in line with the parties' agreement and producing Plaintiffs' fact sheets so that if this case is not resolved on the early cross cutting motions, the parties will be ready to select bellwether cases in short order.[6]

\*       \*       \*

For the reasons discussed above, it is **ORDERED** that Defendants' request for early discovery and motion practice as to the cross cutting issues of general causation and preemption/warning adequacy is **GRANTED**. The parties shall meet and confer about a proposed scheduling order for discovery and motion deadlines on these issues.[7] The parties

---

[5] Indeed, Plaintiffs argue Defendants' schedule is too optimistic, an argument at odds with their suggestion that this is merely a delay tactic by Defendants.

[6] To the extent the Court adopts Defendants' proposal, Plaintiffs ask that any motions on these cross cutting issues be due *after* marketing discovery is complete. But as this Court has repeatedly explained to these very same attorneys, "discovery into Defendants' marketing campaigns to the medical community are irrelevant" to the issues of general causation and preemption/adequacy of warnings. *MDL 3094*, Doc. No. 276 at 20 (E.D. Pa. Oct. 17, 2024). That said, the Court reminds Defendants that they cannot forego searching files or producing documents relevant to these cross cutting issues simply because they would categorize them as "marketing."

[7] The Court agrees with Plaintiffs that Defendants' proposed schedule appears somewhat optimistic and would encourage the parties to consider a slightly revised timeframe—with briefing complete in the middle of 2027 instead of early 2027. That said, if Defendants truly believe all discovery and briefing can be completed in the timeline proposed, the Court will enter an Order consistent with that proposal. Presumably Plaintiffs would not oppose a compressed timeline given their concern that early discovery and motion practice is merely a tactic for delay—a concern which seems to ignore that every extension to the case management deadlines in *MDL 3094* was either requested by Plaintiffs' counsel or unopposed by them. (*See generally* Doc. No. 104 (emphasizing the importance of "efficiency" and "expedience" and raising concerns that the "individual plaintiffs' . . . day in court will be substantially delayed")); *cf. In re GLP-1 Gastrointestinal Injuries*, Master Docket No. BER-L-3367-26, Plfs. Position Statement at 3 ("The MDL's decision to bifurcate certain issues was premised on the idea that early adjudication of selected issues would streamline thousands of cases. The record now shows that premise

shall also meet and confer about a proposed schedule for the exchange of Plaintiffs' fact sheets and medical records that confirm proof of use and proof of diagnosis.  The parties shall submit their proposal(s) by **July 13, 2026.**

**IT IS SO ORDERED**.

/s/*Karen Spencer Marston*

**KAREN SPENCER MARSTON, J.**

---

was false.  The Parties have been litigating these 'cross cutting' issues for years."); *id.* (describing bifurcation as a "pathway that has significantly delayed case development [and] constrained discovery").